Dear Mr. Gatlin:
I am in receipt of your request for an Attorney General's Opinion on behalf of the Louisiana Special Education Center. You are requesting a legal opinion concerning two residents of the Center. You state that both residents are noninterdicted legal majors that are not capable of giving informed consent or participating in any legal decision due to their mental handicap. You have indicated that unlike most of the other residents, these residents were not voluntarily placed in this facility. They were placed by the Court in Hammond State School and were subsequently transferred to this facility. You have also indicated that they were declared to be wards of the state. Prior to reaching eighteen, both individuals were under the supervision of Family Services.
You indicate that your office contacted the Office for Developmental Disabilities after these individuals turned eighteen to see whether they would supervise the care of these individuals. However, that office indicated they assist with the placement of these individuals and not any educational or medical decisions. You are attempting to clarify your legal responsibility concerning these individuals to assure their rights are protected.
Mr. Bill Dick, Social Service Counselor, has indicated by phone that you are specifically interested in these individual's legal rights concerning their educational assignment and placement as well as any medical decisions made on their behalf. Mr. Dick has stated that the center is concerned with the possible conflict of interest that could occur if the center has the continued sole responsibility of making these decisions. Our office is of the opinion that this concern is well-founded. Title 20 of the U.S.C.A. addresses the education of handicapped individuals.
Title 20 U.S.C.A. 1415(b)(1)(B) states the following in pertinent part concerning the procedural safeguards a state educational agency, any local educational agency, and any intermediate educational unit must establish and maintain to assure that handicapped children and their parents or guardians are guaranteed a free appropriate public education:
 (b)(1) The procedures required by this section shall include, but shall not be limited to:
 . . . (B) procedures to protect the rights of the child whenever the parents or guardian of the child are not known, unavailable, or the child is a ward of the State, including the assignment of an individual (who shall not be an employee of the State educational agency, local educational agency, or intermediate educational unit involved in the education or care of the child) to act as a surrogate for the parents or guardian;
Bulletin 1706, Regulations for Implementation of theExceptional Children's Act Sect. 516 et seq. sets forth the same requirement. It provides in pertinent part:
 A. A school system shall ensure that the rights of a child are protected when no parent (as defined in § 960) can be identified and shall assign a surrogate parent whenever it determines that one of the following situations exists:
 1. That the student is a ward of the state (including a ward of the court or of a state agency.)
 2. That it is unable to locate a natural parent or legal guardian by calls, visits, and by sending a letter by certified mail (return receipt requested) to the last known address of the natural parent or the legal guardian and allowing 20 operational days for a response of the intention to appoint a surrogate parent.
Reference should be made to state law concerning mentally retarded or deficient children for any specific educational or medical requirements concerning these individuals. La. C.C. Art.354 states that these children may be placed under continuing or permanent tutorship without formal or complete interdiction. C. C. Art. 355 states the following concerning the petition for continuing or permanent tutorship:
 When a person above the age of fifteen possesses less than two-thirds of the average mental ability of a normal person of the same age, evidenced by standard testing procedures administered by competent persons, the parents of such person, or the person entitled to custody or tutorship if one or both parents be dead, incapacitated, or an absent person, or if the parents be judicially separated or divorced, may, with the concurrence of the coroner of the parish of the mentally deficient person's domicile, petition the court of that district to place such person under a continuing tutorship which shall not automatically end at any age but shall continue until revoked by the court of domicile.
However, if an individual is already of majority as in this case, then La. C.C. Article 356 (2) would apply. It states:
 When the person to be placed under the continuing tutorship is above the age of majority, the proceeding shall be conducted according to the procedural rules established for interdictions.
The procedure for interdictions is found in La. Code of Civil Procedure Art. 4541 et seq. It provides that the petition for interdiction shall be filed in the district court of the parish:
 1) Where he is domiciled,
 2) Where he resides, if he owns property in the state, but has no domicile therein; or
 3) Where he may be found, if he owns property in the state, but has neither a domicile nor a a fixed place of residence therein.
La. Code of Civil Procedure Art. 4543 provides:
 [(a)] proceeding for interdiction may be brought by the spouse
 or any relative of the person sought to be interdicted, or by any other person.
La. C.C. Article 358 confers the responsibilities of giving consent for any medical treatment or educational decisions to the tutor and under tutor. It states:
 The granting of the decree shall confer upon the tutor and under tutor the same authority, privileges, and responsibilities as in other tutorships, including the same authority to give consent for any medical treatment or procedure, to give consent for any educational plan or procedure, and to obtain medical, educational, or other records, but the responsibility of the tutor for the offenses or quasi-offenses of the retarded person shall be the same as that of a curator for those of the interdicted person and the tutorship shall not terminate until the decree is set aside by the court of the domicile, or the court of last domicile if the domicile of the mentally retarded person is removed from the State of Louisiana.
La. C.C. Article 359 discusses the restrictions an interdiction places on an individual. It states:
 The decree if granted shall restrict the legal capacity of the mentally retarded person to that of a permanent minor, except that after the age of eighteen the retarded person, unless formally interdicted, shall have the legal capacity of a minor who has been granted the emancipation conferring the power of administration as set forth in Chapter 2, of this book and title.
In the event an individual has not been interdicted, it should be noted that LSA-R.S. 28:434A allows the facility administrator at a mental health center to consent to emergency surgery of an individual in the following situation:
 If all reasonable efforts to obtain medical consent for emergency surgery on a resident have been exhausted or if there is no parent, tutor, or curator of record, the facility administrator on written recommendation of the attending physician shall have authority to sign such consent consistent with the provisions of R.S. 40:1299.58.
LSA-R.S. 17:348 B allows the Louisiana Special Education Center to provide services,
 . . . until the twenty-fifth birthday for individuals with severe physically handicapping conditions who are receiving work skill training and have not reached employable proficiency by their twenty-fifth birthday, subject to the approval of the State Board of Elementary and Secondary Education and subject to the availability of funds.
Title 28:1301(A)(1) of the Louisiana Administrative Code provides that the Louisiana Special Education Center is to be administered by the Department of Education and is under the supervision and control of the Board of Elementary and Secondary Education. The State Superintendent of Education, with the approval of the Board of Elementary and Secondary Education, shall appoint a Special School superintendent to serve as the chief school officer at each school. (See La. Ad. Code 28:1301(A)(3)).
As set forth in Title 28:1301(C)(2)(a), each board special school superintendent shall be responsible for the following:
 Each Board Special School or Special School District No. 1 superintendent is responsible for the overall management, including the day-to-day operation, of the Special Schools or Special School District No. 1 in accordance with appropriate legislation, rules, regulations, and Board policies.
Bulletin 1706, Section 516 provides the following in pertinent part concerning surrogate parents. It states:
 A. A school system shall ensure that the rights of a child are protected when no parent (as defined in § 960) can be identified and shall assign a surrogate parent whenever it determines that one of the following situations exists:
 1. That the student is a ward of the State (including a ward of the court or of a State agency).
 2. That it is unable to locate a natural parent or legal guardian by calls, visits, and by sending a letter by certified mail (return receipt requested) to the last known address of the natural parent or the legal guardian and allowing 20 operational days for a response of the intention to appoint a surrogate parent.
 C. A surrogate parent shall represent the student in all matters relating to the identification, individual evaluation, and educational placement of the student and the provision of a free appropriate public education including being present at an individual evaluation interpretation meeting, IEP/Placement meeting and annual review meetings, and at any hearing concerning the student.
 D. A method for determining whether a student needs a surrogate parent and for assigning a surrogate parent must be developed and implemented by each school system in a manner which ensures that:
 1. A person assigned as a surrogate parent has no interest that conflicts with the interests of the student and is not a present employee of any state or state supported agency involved in the education or care of the student.
 2. The person assigned has knowledge and skills that insure adequate representation of the student.
 3. All surrogate parents who cease to carry out the responsibilities or no longer meet the criteria of eligibility specified in B above are removed from eligibility.
From what you have indicated, both of these individuals are wards of the state. If so, federal and state law would require a surrogate parent to be appointed to oversee any educational decisions. Please refer to the procedures that are required to be implemented by the Louisiana Special Education Center pursuant to Bulletin 1706, Section 561 that need to be followed when appointing a surrogate parent. Additionally, since these two individuals are over the age of majority, C.C. Article 356(2) and 358 would warrant the interdiction of these individuals for determining medical decisions other than emergency decisions. Once a tutor is appointed, the tutor would be responsible for overseeing any medical and educational decisions.
If I may be of further assistance, please let me know.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _________________________________ BETH CONRAD LANGSTON ASSISTANT ATTORNEY GENERAL
DATE RECEIVED: 08/25/97BRDATE RECEIVED: 09/08/97SHDATE RELEASED:
BETH CONRAD LANGSTONASSISTANT ATTORNEY GENERAL